UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BROOKE T.[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:23-cv-24

Rose, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Brooke T. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Plaintiff presents a single claim of error. For the reasons explained below, the ALJ's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

The above-captioned case represents Plaintiff's second appeal in this Court of the Defendant's adverse finding that she is not disabled. The administrative record at issue in this appeal began in October 2016,[2] when Plaintiff filed an application for Disability Insurance Benefits ("DIB") and a protective application for Supplemental Security Income ("SSI"). In her applications, Plaintiff alleged that she became disabled more than a decade

---

[1] Due to significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

[2] The administrative record reflects that Plaintiff has filed a number of prior unsuccessful applications. Those applications were filed on October 19, 2004, July 31, 2008, and December 8, 2015. The July 31, 2008 application was initially denied on February 24, 2009, was appealed, and a hearing was held before an Administrative Law Judge, who ruled on November 21, 2012 that Plaintiff was not disabled. The Appeals Council denied the claimant's request for review of that adverse finding on June 25, 2014. All other prior applications were denied without a request for hearing, with the last denial before the current application(s) dated March 10, 2016. (Tr. 1664).

1

earlier, on June 15, 2004 at the age of 25, due to a combination of mental and physical impairments.

After her application for benefits was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a hearing held on June 20, 2019, Plaintiff appeared with counsel and gave testimony before ALJ Kevin Barnes; a family friend and a vocational expert also testified. (Tr. 55-87). ALJ Barnes held a supplemental hearing on December 17, 2019. (Tr. 89-104). On January 17, 2020, the ALJ issued his first adverse written decision, concluding that Plaintiff was not disabled. (Tr. 11-31).  The Appeals Council denied review, and Plaintiff filed a judicial appeal in this Court. *See* Case No. 3:20-cv-497-MJN-PBS.

After Plaintiff filed her Statement of Errors in that case, the parties filed a joint stipulation to remand to the Commissioner for further review. In their Joint Stipulation, the parties agreed that on remand, Plaintiff's claim would be completely reevaluated, including through a new hearing. (Tr. 1746). On December 21, 2021, this Court accepted the Joint Stipulation and granted the motion to remand. (Tr. 1750-1751). After remand from this Court to the Appeals Council, the Appeals Council remanded to ALJ Barnes for further proceedings.

On October 20, 2022,  ALJ Barnes conducted a new telephonic hearing. (Tr. 1690-1705). At the hearing and in the written decision that followed, the ALJ acknowledged that the Appeals Council had directed him to:

> 1. Give further consideration to the examining source opinion of B.T. Onamusi, M.D., and explain the weight given to such evidence (20 CFR 404.1527 and 416.927), [and]
>
> 2. Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references in support of the assessed limitations (SSR 96-8p).

2

(Tr. 1664). At the hearing, the ALJ inquired whether Plaintiff wished to offer additional testimony or evidence. Plaintiff declined. (*See* Tr. 1695, counsel's statement that "I don't have any …different information to bring forward at this time."). Therefore, the only testimony received was new testimony by a vocational expert. On November 9, 2022, the ALJ issued a new adverse written decision.

The ALJ found that Plaintiff has a high school education and past relevant work as an Administrative Clerk. She was 25 years old on her alleged disability onset date in 2004. (Tr. 1676). However, administrative *res judicata* precludes consideration of disability for any period prior to March 10, 2016. (Tr. 1664). As of the relevant onset date of March 11, 2016, Plaintiff was 37 years old, still considered a "younger individual." She remained in that age category through the date of the ALJ's last decision.

Plaintiff met the insured status requirements for purposes of DIB through September 30, 2020. (Tr. 1665). Although she has engaged in some work activity as recently as 2020 and 2021, she has not engaged in "substantial gainful activity." (Tr. 1667).

The ALJ determined that Plaintiff has the following severe impairments: "diabetes mellitus, status/post bilateral carpal tunnel release, cubital tunnel syndrome, status/post brain tumor, obesity with status/post gastric bypass, depression, bipolar disorder." (*Id.*) The ALJ also found a number of medically determinable but "non-severe" impairments, including "sleep apnea, hypersomnia, migraines, hypothyroidism, medial and lateral epicondylitis, and peripheral neuralgia." (Tr. 1668). But the ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*See* Tr. 1669).

Considering all of Plaintiff's impairments, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform less than a full range of light work, subject to the following additional limitations:

> Lifting up to 15 pounds occasionally. Standing for up to approximately 5 hours, walking for up to approximately 4 hours, and sitting for up to approximately 7 hours in an 8-hour workday, with normal breaks. No more than frequent reaching fully extended or overhead, handling, fingering, feeling, pushing, or pulling bilaterally. No more than occasional stooping, crouching, kneeling, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds or operation of foot controls bilaterally. The claimant should avoid concentrated exposure to environmental irritants, such as fumes, odors, dust, gas, poorly ventilated areas, and industrial chemicals. The claimant should avoid hazardous machinery and unprotected heights. The claimant is limited to work involving simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple, workrelated decisions, and with few, if any, workplace changes.

(Tr. 1671).

Based upon her RFC, the ALJ held that Plaintiff retained the *physical* exertional capability to engage in her past relevant work as an administrative clerk at the sedentary level. But because that job was semi-skilled, her nonexertional limitations precluded that past work. (Tr. 1676). Still, the VE testified and the ALJ determined that Plaintiff could perform a substantial number of unskilled jobs, including the representative positions of lens-block gauger, atomizer assembler, and ampoule sealer, for which there are approximately 100,000 unskilled jobs available in the national economy. (Tr. 1677). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 1678). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. This judicial appeal followed.

Before this Court, Plaintiff asserts that the ALJ failed to comply with the directive of the Appeals Council to "further evaluate Dr. Onamusi's opinions." (Doc. 10, PageID 2260). As a result of the alleged failure of the ALJ to properly evaluate Dr. Onamusi's

4

opinions, Plaintiff argues that the RFC determined by the ALJ is not substantially supported and that the ultimate non-disability decision must be reversed. But the undersigned finds no reversible error for three reasons: (1) this Court has no jurisdiction to review whether the ALJ complied with the order of the Appeals Council; (2) the ALJ's analysis was within a "zone of choice" and therefore substantially supported; and (3) even if the ALJ had reduced Plaintiff's exertional level to the sedentary level, she would not have been found to be disabled.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

5

evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted); *see also Biestek v. Com'r of Soc. Sec.*, 139 S. Ct. 1148, 1154 (2019) (explaining that "the threshold for such evidentiary sufficiency is not high.")

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B.  Plaintiff's Claims**

    **1. This Court Lacks Jurisdiction to Consider the ALJ's Alleged Failure to Comply with the Appeals Council's Remand Order**

Before addressing Plaintiff's primary claim of error, the Court addresses a preliminary issue concerning the jurisdictional scope of this case. Throughout her Statement of Errors, Plaintiff argues repeatedly that the ALJ failed to comply with the Appeals Council's directive to further explain his analysis of Dr. Onamusi's opinions.

But even if the ALJ disregarded the Appeals Council, this Court lacks jurisdiction to review the ALJ's compliance with its order of remand. "Plainly stated, this Court's scope of review is limited to an analysis of the ALJ's decision and not a review of the ALJ's compliance with the Appeals Council's Order of Remand." *Amber R. v. Com'r of Soc. Sec.*, 2022 WL 3966676, at *2 (S.D. Ohio Aug. 31, 2022) (quoting *Prichard v. Astrue*, No. 2:08-0055, 2011 WL 794997, at *15 (M.D. Tenn. Feb. 28, 2011) (internal quotation omitted)). The Sixth Circuit has not yet addressed the issue, but the "overwhelming majority of courts in this circuit…have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand." *Shope v. Com'r of Soc. Sec.*, 2015 WL 3823165, at *8 (S.D. Ohio June 19, 2015), adopted at 2015 WL 6155919 (Oct. 20, 2015); *see also Hubbard v. Com'r of Soc. Sec.*, 2019 WL 4593624, at *2 (E.D. Mich. Sept. 23, 2019); *but see Kaddo v. Com'r of Soc. Sec.*, 238 F.Supp.3d 939, 943-44 (E.D. Mich. 2017) (adopting minority view that jurisdiction exists).

In addition, several courts have suggested that a later decision not to review an ALJ's decision following a remand order, as occurred in this case, constitutes an implicit finding that the Appeals Council found the second decision to comply with its prior remand order. *See Amber R.*, 2022 WL 3966676, at *2; *Hubbard*, 2019 WL 4866733, at *3 (same);

7

*Brown v. Com'r of Soc. Sec.*, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009). Moreover, the actual directives of the Appeals Council did not dictate any particular outcome. *See generally, Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001).

### 2. The ALJ's Evaluation of Plaintiff's RFC is Substantially Supported

This Court's lack of jurisdiction to review whether the ALJ did or did not comply with the Appeal Council's Order of Remand clarifies and refocuses the Court's inquiry on whether the ALJ's RFC findings and ultimate non-disability finding are substantially supported. Whether the ALJ fully complied with the remand order is not relevant. What is relevant is whether the ALJ reversibly erred in his November 2022 analysis of Dr. Onamusi's opinions concerning Plaintiff's weight restrictions for lifting and carrying. The Commissioner's findings are not to be reversed "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. *Elkins v. Sec'y of Health & Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

In determining whether the ALJ's analysis is substantially supported, the undersigned begins by noting that this case is governed by the regulations that apply to applications filed prior to March 27, 2017, at which time a hierarchical structure of the evaluation of medical opinion evidence existed. Under the applicable regulatory structure, an ALJ is required to give the opinions of treating physicians the most weight, and to give greater weight to the opinions of examining consultants than to the opinions of non-examining consultants. If an ALJ elects not to give controlling weight to the opinion of a

treating physician, he must articulate "good reasons," but the same articulation requirements did not previously apply to consulting physicians.[3]

Dr. Onamusi was an examining agency consultant who examined Plaintiff on August 29, 2019. As part of his exam, he completed a medical evaluation report with manual muscle testing. (Tr. 1489-1492). Muscular testing was largely "normal," as was Plaintiff's ability to grasp and manipulate and fine motor coordination. (*See* Tr. 1489, 1491). Dr. Onamusi also completed a Medical Source Statement, which is a "check-box" style form. (Tr. 1493-1498). On that form, Dr. Onamusi checked boxes for two weight categories (up to 10 pounds and 11 to 20 pounds), indicating in separate responses that Plaintiff could "occasionally" both lift and carry those amounts. He also checked boxes indicating that she could "never" lift or carry over 21 pounds. (Tr. 1493). He did not separately indicate that she could "frequently" lift or carry any particular amount. By contrast, he checked boxes noting she can "frequently" use her right and left hands for reaching in all directions, handling, fingering and pushing/pulling. (Tr. 1495).

Dr. Onamusi also provided a narrative opinion letter. (Tr. 1499-1502). In that letter, he noted Plaintiff's reported history of pain in her neck and joints at the extremities, predominately her elbows and shoulders, but that after treatment "[t]he shoulders and elbows are doing fine." He noted her remote history of bilateral carpal tunnel release but again opined that "both wrists are doing fine." (Tr. 1499). He wrote that she can "do housework, laundry and grocery shop," and was able to use her hands despite pain due to reported "arthritis." (Tr. 1500). He opined that she was able to "lift up to 15 pounds occasionally" and "use the upper extremities for gross and fine motor tasks frequently."

---

[3]Effective March 27, 2017, many long-standing regulations were revised or rescinded. A new rule with different articulation requirements entirely replaces the treating physician rule. *See* 20 C.F.R. § 404.1520c.

9

(Tr. 1501). Finally, he wrote that her bilateral grip strength was 20 pounds, that she "was able to reach forward, push or pull with the upper extremities," and was able to use her hands for fine coordination and manipulative tasks." (*Id.*)

Apart from Dr. Onamusi, the only other medical opinion evidence in the record concerning Plaintiff's physical impairments was from two non-examining agency physicians, both of whom opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, consistent with the medium exertional level. But, citing the longitudinal record that post-dated their review including Dr. Onamusi's report, the ALJ gave those opinions "minimal weight." (Tr. 1675; *see also* Tr. 26, giving the same opinions "little weight" in January 2020). In comparison, he gave "significant" weight to Dr. Onamusi's opinions in formulating Plaintiff's physical RFC. (Tr. 1674, *see also* Tr. 24, giving "great weight" to the same opinions in January 2020). After reviewing all evidence, the ALJ concluded that Plaintiff remained capable of a reduced range of work at the "light" exertional level.

Plaintiff argues that this was error because some of Dr. Onamusi's check-box opinions are incompatible with work at the light exertional level. "Light work involves lifting no more than 20 pounds at a time *with frequent lifting or carrying of objects weighing up to 10 pounds*." 20 C.F.R. § 404.1567(b) (emphasis added). Plaintiff highlights the fact that Dr. Onamusi's check-box opinions stated that her lifting and carrying abilities were limited to the "occasional" level for both the "up to 10 pound" level and in the "11 to 20 pound" weight categories. In other words, on the check-box form, Dr. Onamusi did not state that Plaintiff could perform "frequent lifting or carrying of objects" up to 10 pounds. In contrast, Dr. Onamusi's narrative opinion letter opined that Plaintiff should be limited to "lifting" up

10

to 15 pounds, but was silent as to any other weight restrictions for "frequent" lifting or carrying.

Despite giving "significant" weight to Dr. Onamusi's opinions overall and incorporating the narrative limitation to "lifting" up to 15 pounds only occasionally, the ALJ clarified in November 2022 that he did not intend to adopt any further limitations to the "light" exertional RFC findings, The ALJ explained that he had reviewed his prior decision and considered "new medical evidence" in the record that post-dated Dr. Onamusi's opinions. He pointed out inconsistencies between Dr. Onamusi's check-box opinions and narrative letter opinions, stating he was adopting only "some" of the check-the-box recommendations "especially in areas where [the] narrative explanation is not given in clear and specific vocationally-defined terms."

> The Appeals Council's implementing order directed me to give further consideration to Dr. Onamusi's examining source opinion see Exhibit B16A), as given following his consultative examination of the claimant completed in August 2019 at the request of DDD (Exhibit B30F). I have reviewed the prior decision and the new medical evidence of record, and give significant weight to Dr. Onamusi's opinion, primarily as it is given in the narrative portion of his consultative examination report. I have adopted some of Dr. Onamusi's check-the-box recommendations, especially in areas where his narrative explanation is not given in clear and specific vocationally-defined terms. This includes the limitations on standing, walking, and sitting, noted above. In the narrative report, Dr. Onamusi noted that the claimant is able to do these tasks "frequently," while he provided specific total hour limits in the check-the-box portion, which I have adopted. Where the narrative portion provides specifics, however, such as the limitation to lifting fifteen pounds, I have adopted the narrative portion of the report. During the hearing, the claimant, through her attorney, argued that Dr. Onamusi opined that the claimant was only capable of lifting and carrying up to twenty pounds for one-third of the day, up to ten pounds an additional one-third of the day, and incapable of lifting for the remaining third. This argument is based on the check-the-box opinion included with Dr. Onamusi's report (Exhibit B30F at 6). In Dr. Onamusi's narrative medical opinion, however, he opines that the claimant is able to "lift up to fifteen pounds occasionally," with no specific statement regarding the amount of weight that the claimant can lift and/or carry on a more frequent basis (*Id.* at 14). Again, where the narrative and check-the-box reports differ, I give more weight to the narrative explanation to the extent that it is given in

11

> vocationally defined terms, as it provides a more open-ended opportunity for Dr. Onamusi to give clear and specific recommendations. *I have therefore adopted the recommended fifteen-pound cap on weight that the claimant can be required to lift, on no more than an occasional basis, and, in the absence of clear recommendations contradicting this level of functioning, have adopted the limitations normally associated with light work to define the claimant's ability to lift and carry on a more frequent basis.*

(Tr. 1674-1675, emphasis added).

In this appeal, Plaintiff argues that because the ALJ continued to give Dr. Onamusi's consulting opinions "significant" weight, the ALJ was required to adopt all limitations that Dr. Onamusi endorsed, including the additional check-box limitation to only "occasionally" lifting and carrying up to 10 pounds. The undersigned notes that if Plaintiff could engage only in "occasional" lifting and carrying of up to 15 pounds without any "frequent" lifting or carrying, the RFC as determined still would permit her to engage in sedentary work. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §404.1567(a).

Nevertheless, Plaintiff argues that the ALJ's explanation for failing to further limit her weight restrictions was not good enough. Additionally, Plaintiff advocates for a unique interpretation of Dr. Onamusi's opinions that would preclude even sedentary work. She reasons that by limiting her to only "occasional" lifting and carrying of up to 15 pounds (using the lower amount of the narrative opinion in combination with the check-box limitations), Dr. Onamusi's implicit opinion is that she was wholly precluded "from lifting or carrying *any amount of weight* the other 2/3 of the workday." (Doc. 10, PageID 2263). As Plaintiff's counsel argued at the October 2022 hearing, the inability to lift so much as a feather for 2/3 of the workday would be work-preclusive at any exertional level. (*See* Tr. 1702-1705, counsel's argument; Tr. 1699-1700, VE testimony that an individual who

12

"could do no lifting or carrying" for two-thirds of the day would be precluded from even sedentary work; Tr. 1704, VE testimony that "no lifting at all, even files, paper, you know…then that is work-preclusive if there is no lifting at all.").

In response to a similar argument by counsel at the hearing, ALJ voiced strong disagreement with Plaintiff's interpretation of Dr. Onamusi's report as containing a limitation that required absolutely no lifting or carrying for 2/3 of the day. Alluding to the singular statement in narrative report that limited her to lifting 15 pounds occasionally, the ALJ explained: "So if Dr. [Onamusi] wanted to say that, Counsel, he could've said lift up to 15 pounds occasionally, no lifting anything the remainder of the day. He doesn't say that, so it seems like you want me to infer something that's just not –" (Tr. 1704).

The undersigned finds the ALJ's interpretation of the inconsistencies between Dr. Onamusi's narrative report and check-box statements, and the ALJ's written RFC findings to be both reasonable and substantially supported. The ALJ explained that the RFC determination of a reduced range of light exertional work was based in part on his review of the longitudinal record, which included several years of evidence that post-dated Dr. Onamusi's August 2019 opinions. In support of a more restricted RFC, Plaintiff relies solely on Dr. Onamusi's opinions, which were (at best) inconsistent concerning the amount of weight she could lift or carry.[4]

Because he was only a one-time consultant and not a treating physician, the ALJ was not required to give "good reasons" for the precise weight that he gave to Dr.

---

[4] Plaintiff points to no other medical evidence of record that would undermine the substantial evidence in support of the RFC as determined or that would support her alleged inability to lift so much as a feather for 2/3 of the day.

13

Onamusi's opinions in assessing Plaintiff's RFC. Rather, the ALJ was merely required to explain how he arrived at the RFC as determined. And that, the ALJ accomplished.

> The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.

*Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. 2009). The ALJ was not required to adopt every aspect of Dr. Onamusi's opinions. "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt [it]." *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015).

The ALJ clearly explained why he found ambiguity and was adopting only "some" of Dr. Onamusi's RFC limitations despite giving "significant" weight to those opinions overall. The ALJ cited two reasons in particular that supported the RFC as determined: (1) his review of the longitudinal evidence including new records that post-dated Dr. Onamusi's report, (Tr. 1675); and (2) inconsistencies between Dr. Onamusi's narrative report and the check-box form opinions, "especially" where the narrative report did not include a specific vocational limitation. (Tr. 1674).

It is undisputed that with respect to Plaintiff's lifting and carrying restrictions. Dr. Onamusi did not provide *any* narrative statements about how much Plaintiff could lift or carry on a frequent basis. The only limitation in the narrative statement was the lifting restriction of up to 15 pounds "occasionally." The ALJ's finding of ambiguity was reasonable given the lack of any further weight-based limitation in the narrative report, combined with multiple narrative statements about Plaintiff's abilities to use her upper

14

extremities with minimal difficulty, including "frequently" for all motor tasks.[5] (Tr. 1501). It was arguably more reasonable - and certainly within the zone of choice - for the ALJ to conclude based on the perceived ambiguity and the longitudinal record that Plaintiff remained capable of "frequent" lifting and carrying up to 10 pounds (consistent with light work), than to incorporate a work-preclusive weight limitation (no lifting or carrying any amount for 2/3 of the day) that was never explicitly endorsed by Dr. Onamusi in muscular testing results, on the check-box form, or in his narrative report. [6]

### 3. Harmless Error Analysis

But the undersigned's conclusion that the ALJ's analysis falls within a reasonable zone of choice and reflects no reversible error does not mean that the ALJ's analysis was free from all error. During the October 2022 hearing, the ALJ asked the VE questions about a person of Plaintiff's age, education, work experience and skill set who could perform "less than light work" which the ALJ defined as follows:

> Able to lift up to 15 pounds occasionally; stand for approximately 5 hours per 8-hour workday; walk for approximately 4 hours per 8-hour workday; sit for approximately 7 hours per 8-hour workday; all with normal breaks. This individual would be limited to frequent pushing and pulling bilaterally; frequent operation of foot controls bilaterally;…would never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, crouch, and kneel; would be limited to frequent reaching in all directions, that's fully extended and overhead, frequent handling, fingering, and feeling. And all of these manipulative limitations would be bilateral. Said individual would avoid concentrated exposure to environmental irritants, such as fumes, odors, dust, and gas, poorly ventilated areas, and industrial chemicals; would avoid hazardous machinery and unprotected heights; and finally, work would be limited to simple, routine, and repetitive tasks,

---

[5]Dr. Onamusi wrote in his narrative report that despite a history of impairment, her elbows, shoulders and wrists were all "doing fine" after successful treatment. He also opined that she could use her "upper extremities for gross and fine motor tasks frequently," that her bilateral grip strength was 20 pounds, that she "was able to reach forward, push or pull with the upper extremities," and was able to use her hands for fine coordination and manipulative tasks." (Tr. 1501). He did not note any limits in her ability to perform housework, laundry and grocery shop. (Tr. 1500).
[6]On the check-box form, Dr. Onamusi checked "never" for the activities of lifting and carrying only for weight categories in excess of 21 pounds. (Tr. 1493).

15

>performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, with few, if any workplace changes.

(Tr. 1696-1697).

The VE began her response to the ALJ's questions by clarifying that the 15 pound lifting restriction "<u>puts us at the sedentary level</u>" rather than the "light" level that the ALJ had suggested. (Tr. 1697). As previously noted, the regulations define sedentary work as "involving lifting no more than 10 pounds at a time" with no more than occasional lifting or carrying such objects. 20 C.F.R. §404.1567(a). Based on her clarification that the hypothetical RFC described a sedentary level of exertion, the VE then testified that such an individual would remain capable of performing approximately 100,000 jobs in the national economy. (Tr. 1697-1698).

In his written decision, the ALJ determined that Plaintiff had virtually the same RFC limitations as he provided to the VE in the hypothetical,[7] but again described those limitations as falling within the "light" exertional level instead of acknowledging the VE's testimony that the exertional level would be sedentary. (Tr. 1671). But the ALJ's written decision determined that Plaintiff could perform the same 100,000 jobs <u>at the sedentary level</u> to which the VE testified. (Tr. 1660-1689). "A person who has a residual capacity for light work generally also can perform sedentary work." *Anderson v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 32, 36-37, 2010 WL 5376877, at *5 (6th Cir. Dec. 22, 2010) (internal quotation and citation omitted). Therefore, it "is a non sequitur to argue that because

---

[7]The lone difference was that at the hearing, the ALJ stated that the individual could engage in "frequent" operation of foot controls bilaterally, but in the RFC as determined, the ALJ stated that Plaintiff could not use bilateral foot controls. By failing to raise the discrepancy, Plaintiff has waived any error, which appears to have been harmless in any event.

plaintiff suffered conditions that limited her job base essentially to sedentary jobs, the ALJ erred in concluding that plaintiff was able to perform a limited range of light work." *Id.*

Courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Plaintiff here does not allege a deprivation of substantial rights; therefore, no error requires reversal in the absence of prejudice. "[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) (internal quotation marks and citation omitted). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021); *see also, generally, Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009). Because the ALJ's non-disability determination remains substantially supported by the VE's testimony even if this Court were to assume her limitations reduce her exertional level to sedentary work, any error in the ALJ's articulation of her exertional level as "light" was harmless.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT the decision be AFFIRMED** and that this case be **CLOSED.**

                                            *s/Stephanie K. Bowman*
                                            Stephanie K. Bowman
                                            United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BROOKE T.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:23-cv-24

Rose, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).